SUPREME COURT OF ARIZONA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-97-0428-AP |
| Appellee, | ) | |
| | ) | Maricopa County Superior |
| v. | ) | Court |
| | ) | No. CR-95-01754(A) |
| TIMOTHY STUART RING, | ) | |
| | ) | **S U P P L E M E N T A L** |
| Appellant. | ) | **O P I N I O N** |
| | ) | |
| _____ | ) | |

Appeal from the Superior Court of Maricopa County
The Honorable Gregory H. Martin, Judge

**REMANDED FOR RESENTENCING**

_____

Janet Napolitano, Former Attorney General                    Phoenix
Terry Goddard, Attorney General
        by    Kent E. Cattani, Chief Counsel,
              Capital Litigation Section
        and   Robert L. Ellman
        and   James P. Beene
        and   John P. Todd
        and   Bruce M. Ferg                                  Tucson
Assistant Attorneys General
Attorneys for the State of Arizona

Osborn Maledon, P.A.                                         Phoenix
        by    John A. Stookey
        and   Larry A. Hammond
        and   Daniel L. Kaplan
Attorneys for Timothy Stuart Ring

_____

M c G R E G O R, Vice Chief Justice

**¶1**     The only issue before us is whether reversible error occurred when a trial judge sentenced Timothy Stuart Ring to death under a procedure that violated the right to a jury trial under the

Sixth Amendment to the United States Constitution. *See Ring v. Arizona*, 536 U.S. 584, 609 122 S. Ct. 2428, 2443 (2002) (*Ring II*). We have jurisdiction pursuant to Article VI, Section 5.3 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) section 13-4031 (2001). Based on our review of the record, we conclude that the Sixth Amendment violation constituted prejudicial error.

**I.**

¶2 In *Ring II*, the United States Supreme Court held that Arizona's former capital sentencing scheme violated the Sixth Amendment. *Ring II*, 536 U.S. at 609, 122 S. Ct. at 2443. The Court declared that "[c]apital defendants, no less than non-capital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id*. at 589, 122 S. Ct. at 2432. The Court reversed our decision in *State v. Ring*, 200 Ariz. 267, 25 P.3d 1139 (2001) (*Ring I*), and remanded for further proceedings consistent with its decision. *Ring II*, 536 U.S. at 609, 122 S. Ct. at 2443.

¶3 Following the Supreme Court's *Ring II* decision, we consolidated all death penalty cases in which this court had not yet issued a direct appeal mandate to determine whether *Ring II* requires this court to reverse or vacate the defendants' death sentences. In *State v. Ring*, 204 Ariz. 534, __ ¶ 53, 65 P.3d 915, 936 (2003) (*Ring III*), we held that we will examine a death sentence imposed under Arizona's superseded capital sentencing

2

statutes for harmless error.

## II.

¶4      On November 28, 1994, Ring, aided by two others, killed John Magoch, a Wells Fargo armored car driver, in the course of executing a planned armored car robbery. *Ring I*, 200 Ariz. at 272 ¶ 12, 25 P.3d at 1144.[*] A jury found, beyond a reasonable doubt, that Ring committed first degree felony murder, conspiracy to commit armed robbery, armed robbery, burglary and theft. *Id*. at 270 ¶ 1, 25 P.3d at 1142. After conducting the aggravation/mitigation hearing, the judge found that the evidence supported two aggravating circumstances: that Ring murdered Magoch with the expectation of pecuniary gain, A.R.S. section 13-703.F.5 (Supp. 1996); and that the murder was committed in an especially cruel, heinous or depraved manner, A.R.S. section 13-703.F.6.

¶5      The judge concluded that Ring's minimal criminal record was a non-statutory mitigating circumstance. He rejected two other non-statutory mitigating circumstances: that one of the co-conspirators, James Greenham, was the shooter and that Ring was not at the crime scene. The judge also determined that Ring did not establish any statutory mitigating circumstance by a preponderance of the evidence.

¶6      On direct appeal, this court affirmed Ring's first degree

---

[*]     For a thorough description of the facts, see *Ring I*, 200 Ariz. at 267-73 ¶¶ 2-13, at 1139-45.

murder conviction and death sentence, but held the evidence did not support the cruel, heinous or depraved finding. *Ring I*, 200 Ariz. at 282 ¶ 56, 284 ¶ 65, 25 P.3d at 1154, 1156. We must now review Ring's death sentence for harmless error.

¶7     We will find constitutional error harmless if we conclude, beyond a reasonable doubt, that the error did not contribute to or affect the sentencing outcome. *Ring III*, 204 Ariz. at ___, ¶¶ 103-04, 65 P.3d at 946. If we conclude that reasonable doubt exists, however, then the error is prejudicial and the case must be remanded for a new sentencing hearing under Arizona's amended capital sentencing statutes. *Id.* at ___, ¶ 102, 65 P.3d at 946.

¶8     The pecuniary gain aggravating circumstance exists when "[t]he defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value." A.R.S. § 13-703.F.5 (Supp. 2002). To establish this aggravating circumstance, the State must prove, beyond a reasonable doubt, that "the expectation of pecuniary gain is a motive, cause, or impetus for the murder and not merely a result of the murder." *State v. Hyde*, 186 Ariz. 252, 280, 921 P.2d 655, 683 (1996). The State can satisfy its burden through direct or strong circumstantial evidence. *State v. Cañez*, 202 Ariz. 133, 159 ¶ 91, 42 P.3d 564, 590 (2002).

¶9     As the State asserts, the evidence that Ring committed

4

this murder for pecuniary gain is strong. *See Ring I*, 200 Ariz. at 282 ¶ 57, 25 P.3d at 1154 ("[K]illing Magoch was for no other comprehensible reason than to facilitate the robbery."). The trial judge's pecuniary gain finding constitutes harmless error, however, only if "no reasonable jury could find that the State *failed* to prove a pecuniary [motive] beyond a reasonable doubt" at the aggravation/mitigation hearing. *State v. Finch*, ___ Ariz. ___, ___ ¶ 8, ___ P.3d ___, ___ (2003).

¶10     Ring's co-conspirator Greenham, who did not testify during the guilt phase of Ring's trial, did testify at the aggravation/mitigation hearing pursuant to a plea agreement. Greenham's testimony placed Ring at the scene of the murder and identified him as the shooter. Greenham stated that he, Ring and William Ferguson devised a plan to rob an armored car at the Arrowhead Mall in Phoenix. He further testified that Ring assumed "the role as leader because he laid out all the tactics" and that all the co-conspirators were armed during the commission of the robbery. According to Greenham, Ring carried a pistol and a twenty-two rifle, modified with a scope and homemade silencer. After Magoch was killed, Greenham, followed by Ring and Ferguson in separate vehicles, drove the armored car to a parking lot, where the three cohorts unloaded the money and piled it into the back of Ring's pickup truck.

¶11     On cross-examination, the defense attacked Greenham's

5

testimony on multiple fronts. Greenham had made prior statements to the police identifying himself as the shooter. Greenham also admitted that his testimony was "pay back" against Ring because Ring threatened his life and interfered with Greenham's relationship with his ex-wife. The defense also questioned Greenham about a prior statement he allegedly made claiming that the police concocted the story disclosed through his testimony.

¶12    Greenham's testimony was essential to the pecuniary gain finding. After evaluating Greenham's credibility and determining which portions of his testimony were true, the trial court concluded:

> The evidence clearly shows beyond a reasonable doubt that Mr. Magoch was killed in order to obtain the approximately one-half million dollars in cash in the armored car. Taking the cash from the armored car was the motive and reason for Mr. Magoch's murder and not just the result.

*Ring I*, 200 Ariz. at 282 ¶ 57, 25 P.3d at 1154 (quoting Special Verdict at 3).

¶13    Because the trial judge's pecuniary gain factor rested upon his evaluation of Greenham's credibility, we cannot say beyond a reasonable doubt that a reasonable jury considering Greenham's testimony would draw the same conclusions and make the same determinations as did the trial judge. A reasonable jury could question Greenham's veracity and conclude that the State had not met its burden of establishing this aggravating factor beyond a reasonable doubt. We therefore conclude that finding the pecuniary

6

gain factor was not harmless error.

¶14     Arizona law requires the State to prove at least one aggravating circumstance in order for it to obtain a death sentence.  A.R.S. § 13-703.E.  Because the failure to submit the only aggravating circumstance alleged against Ring to the jury constitutes prejudicial error, we need not consider Ring's mitigation arguments.

### III.

¶15     For the foregoing reasons, we vacate Ring's death sentence and remand for resentencing under A.R.S. sections 13-703 and 13-703.01 (Supp. 2002).


_____
                        Ruth V. McGregor, Vice Chief Justice



CONCURRING:


_____
Rebecca White Berch, Justice



_____
Michael D. Ryan, Justice



   * Justice Hurwitz took no part in the consideration or decision of this case.


**J O N E S**, C.J., concurring in part, dissenting in part:

7

**¶16**     I concur in the result, but dissent from the majority's conclusion that harmless error analysis is appropriate where sentencing determinations are made by the trial judge in the absence of the jury.  The right to trial by an impartial jury is fundamental.  The sentencing phase is, of itself, a life or death matter.  Where a judge, not a jury, determines all questions pertaining to sentencing, I believe a violation of the Sixth Amendment to the Constitution of the United States has occurred. In the aftermath of the Supreme Court's decision in *Ring v. Arizona,* 536 U.S. 584, 122 S. Ct. 2428 (2002) (*Ring II*), the absence of the jury in the sentencing phase of a capital trial necessarily amounts to structural error.  I would remand the case for resentencing, simply on the basis of the Sixth Amendment violation.  *See State v. Ring,* _____ Ariz. _____, _____ ¶¶ 105-14, 65 P.3d 915, 946-48 (2003) (Feldman J., concurring in part, dissenting in part) (*Ring III*).

_____
Charles E. Jones, Chief Justice