107 P.3d 939

**STATE of Arizona, Appellee,**

v.

**Dwayne Alvin PITRE, Appellant.**

**No. 1 CA–CR 03–0526.**

Court of Appeals of Arizona,
Division 1, Department C.

March 4, 2005.

As Corrected March 8, 2005.

Terry Goddard, Arizona Attorney General, by Randall M. Howe, Chief Counsel, and Jon G. Anderson, Assistant Attorney General, Kerri l. Chamberlin, Assistant Attorney General, Criminal Appeals Section, Phoenix, Attorneys for Appellee.

Susan Sherwin, Office of the Legal Advocate, by Thomas J. Dennis, Phoenix, Attorneys for Appellant.

## OPINION

KESSLER, Judge.

¶ 1 Defendant Dwayne Alvin Pitre appeals from his convictions and sentences for fourteen crimes, arguing the superior court erred in admitting into evidence prior convictions for purposes of impeachment. During the pendency of the appeal, this Court ordered Pitre and the State to file supplemental briefs discussing the propriety of Pitre's sentences under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). For the reasons stated below, we affirm Pitre's convictions but vacate the sentences and remand for resentencing.

## PROCEDURAL AND FACTUAL BACKGROUND

¶ 2 Pitre was charged with five counts of armed robbery, five counts of kidnaping, three counts of aggravated assault and one count of theft of means of transportation. Prior to the commencement of a jury trial, the State requested a hearing to determine whether it could impeach Pitre with four alleged prior felony convictions [1] pursuant to Arizona Rule of Evidence 609. The superior court considered the Rule 609 motion before Pitre decided whether he would testify.[2] The court decided that the State could use all four felony convictions to impeach Pitre if he chose to testify. The court refused to sanitize the nature of the crimes. Pitre elected not to testify.

¶ 3 The jury found Pitre guilty on all fourteen counts. The court sentenced Pitre to a total of 160 years' imprisonment. He timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031 (2001) and 13–4033(A) (2001).

## DISCUSSION

### A.   Admission of Prior Convictions for Impeachment Purposes

¶ 4 Pitre first argues the superior court erred by ruling that it would admit his prior convictions for impeachment purposes. While we review for an abuse of discretion a court's decision to admit or sanitize prior felony convictions for impeachment purposes, Pitre waived this issue by failing to testify at trial. *See State v. Green*, 200 Ariz. 496, 498, ¶ 7, 29 P.3d 271, 273 (2001) (reviewing for an abuse of discretion a trial court's ruling allowing admissibility of prior felony convictions); *see also State v. Montaño*, 204 Ariz. 413, 426, ¶ 66, 65 P.3d 61, 74 (2003) (it is within the trial court's discretion to sanitize prior convictions), *supplemented on different grounds by* 206 Ariz. 296, 77 P.3d 1246 (2003); *State v. Smyers*, 207 Ariz. 314, 318, ¶ 15, 86 P.3d 370, 374 (2004) (a defendant must testify at trial to preserve a challenge to the trial court's ruling regarding the admissibility of prior convictions for impeachment purposes).

¶ 5 The longstanding rule in Arizona has been that "a defendant must take the stand before he can challenge an adverse pretrial ruling allowing prior convictions to be admitted for impeachment purposes." *State v. Allie*, 147 Ariz. 320, 327, 710 P.2d 430, 437 (1985). The rationale behind the rule is that "[w]ithout defendant's testimony, a reviewing court cannot properly weigh the probative value of the testimony against the impact of the impeachment." *State v. Conner*, 163 Ariz. 97, 102, 786 P.2d 948, 953

---

1.   The State alleged Pitre had the following four prior felony convictions: (1) a 1994 conviction for possession of narcotic drugs; (2) a 1989 conviction for resisting arrest; (3) a 1987 conviction for solicitation to possess cocaine; and (4) a 1986 conviction for theft.

2.   Prior to trial, Pitre testified at the voluntariness hearing and admitted the four prior felony convictions.

(1990). Absent a record of a defendant's testimony, cross-examination, and an assessment of the impact of the impeachment on the jury, it is too speculative for a reviewing court to determine if the trial court erred. *Id.*

¶ 6 Pitre filed an appeal based on the decision of this Court in *State v. Smyers,* which held that, if a trial court's decision to admit prior convictions for the purpose of impeachment is erroneous, the defendant is prejudiced by his or her inability to make an informed decision about the potential consequences of his testimony. 205 Ariz. 479, 484, ¶ 22, 73 P.3d 610, 615 (App.2003), *vacated by Smyers,* 207 Ariz. at 318, ¶ 16, 86 P.3d at 374.

¶ 7 However, as recognized by Pitre, the Arizona Supreme Court vacated in relevant part that portion of this Court's decision in *Smyers* that formed the basis for his appeal. *Smyers,* 207 Ariz. at 318, ¶ 15, 86 P.3d at 374. The supreme court found this Court erred because it reviewed the trial court's Rule 609 ruling even though the defendant did not testify at trial. *Id.* at 316, ¶ 5, 86 P.3d at 372. The court held that the defendant's "decision not to testify at trial preclude[d] him from challenging the trial court's [Rule 609] pretrial ruling on appeal." *Id.* at 318, ¶ 15, 86 P.3d at 374.

¶ 8 Pitre did not testify at trial. Therefore, he waived his right to challenge the superior court's ruling to admit prior convictions pursuant to Rule 609.

### B. Propriety of Sentencing under *Blakely*

¶ 9 Pitre contends his aggravated sentences run afoul of *Blakely.* At a voluntariness hearing Pitre admitted four prior non-dangerous felony convictions. The superior court used two of these convictions to designate Pitre as a repeat offender pursuant to A.R.S. § 13–604(V)(1)(d) (2001). The court found no mitigating factors and the following aggravating factors for each count: the remaining two prior non-dangerous felony convictions, "[t]he presence of armed accomplices, the extent of the trauma suffered by the victims and the use of gratuitous violence . . . ."

¶ 10 The court imposed aggravated sentences for all fourteen counts. The court sentenced Pitre as a repeat offender on all counts in exchange for the State treating all the dangerous offenses as non-dangerous. On each of the five armed robbery counts, class 2 felonies, the court sentenced Pitre to twenty-eight years' imprisonment. The presumptive sentence is 15.75 years' imprisonment. A.R.S. § 13–604(D) (Supp.2004). On each of the five kidnaping counts, class 4 felonies, the court imposed a twelve-year sentence. The presumptive sentence is ten years. *Id.* § 13–604(C). For theft of means of transportation and three counts of aggravated assault, all class 3 felonies, Pitre received twenty-year sentences rather than the presumptive 11.25–year sentences. *Id.* § 13–604(D). The court ordered all crimes committed against each individual victim to run concurrently. The court then ordered the count with the highest imprisonment time for each victim to run consecutively. The end result is that Pitre has an effective 160–year sentence.

¶ 11 The State contends that Pitre has waived his *Blakely* argument because he did not raise the issue at trial. Just because Pitre did not raise this issue below does not preclude us from considering it. *See State v. Munninger,* 209 Ariz. 473, 477–78, ¶¶ 8–12, 104 P.3d 204, 208–09 (App.2005); *State v. Martinez,* 209 Ariz. 280, 283, ¶ 9, 100 P.3d 30, 33 (App.2004), *review granted* (Feb. 8, 2005); *State v. Resendis–Felix,* 209 Ariz. 292, 294, ¶ 6, 100 P.3d 457, 459 (App.2004). *See also State v. Tschilar,* 200 Ariz. 427, 432, ¶ 15, 27 P.3d 331, 336 (App.2001) ("*Apprendi* had not been decided when Tschilar was sentenced, but, because it presents a new rule of constitutional law, its rationale is applied to cases pending on direct review."). We review issues raised for the first time on appeal for fundamental error. *State v. Hernandez,* 191 Ariz. 553, 560, ¶ 28, 959 P.2d 810, 817 (App. 1998). Imposition of a sentence in violation of *Blakely* may be fundamental error. *Resendis–Felix,* 209 Ariz. at 294, ¶¶ 5–6, 100 P.3d at 459.

¶ 12 For a court to impose a sentence longer than the statutory presumptive sentence, "[o]ther than the fact of a prior conviction," the court may consider only those facts "*reflected in the jury verdict or admitted by*

*the defendant." Blakely*, 124 S.Ct. at 2536, 2537 (citations and quotations omitted). Any other aggravating factors must be determined by a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *United States v. Booker*, — U.S. —, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005) (*"Any fact* (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.") (emphasis added).

¶ 13 Pitre's sentences are invalid under *Blakely*. The State correctly notes that the superior court properly used one of the factors to aggravate Pitre's sentences: two prior non-dangerous felony convictions to which Pitre admitted. *See Blakely*, 124 S.Ct. at 2536, 2537 (a court may consider facts admitted by a defendant and prior convictions to aggravate a sentence). However, we disagree with the State's contention that a sole valid factor under *Blakely* opens the door and allows a court without a jury to consider any other factors that do not fit within *Blakely's* confines.

¶ 14 Arizona case law mandates that we reject this "one valid factor is sufficient" approach. In applying *Apprendi* to Arizona's capital sentencing scheme, unless the error is otherwise harmless, our supreme court will reverse death sentences in which the trial court relied on the presence of aggravating factors not admitted by defendants and not found by juries even though there were other aggravating factors that did not need to be found by a jury. *See State v. Murdaugh*, 209 Ariz. 19, 30, ¶ 51, 97 P.3d 844, 855 (2004). Indeed, in *State v. Ring*, 204 Ariz. 534, 561–62, ¶¶ 87–90, 65 P.3d 915, 942–43 (2003) (*"Ring III"*), our supreme court rejected the argument that if one aggravating factor is established beyond a reasonable doubt the trial court's consideration of other aggravating factors is harmless and does not require resentencing. When dealing with the import of the constitutional right to have a jury determine the factors to sentence a defendant, there is no reason to apply a different rule in the noncapital context. *See State v. Timmons*, 209 Ariz. 403, 406, ¶ 10, 103 P.3d 315, 318 (App.2005) ("Because *Blakely* has now similarly engrafted on Arizona's noncapital sentencing process new requirements not specifically found within the statutes, we see no reason why principles different from those grounding *Ring III* should apply in the noncapital sentencing context.").

¶ 15 Furthermore, the United States Supreme Court effectively rejected the argument that one proper factor is adequate in *Blakely* when it clarified the scope of the rule in *Apprendi*. That rule states that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. In *Blakely*, Washington State asserted that *Apprendi* allowed the defendant's 53–month sentence because it was well below the "statutory maximum" of 120 months under a Washington statute. 124 S.Ct. at 2537. The "statutory maximum" to which the *Apprendi* rule refers, however, is not necessarily the maximum sentence a court may impose under a state's statutory sentencing scheme. "Our precedents make clear ... that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id.* (citing *Ring v. Arizona*, 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (*Ring II* )).

¶ 16 The *Blakely* court's emphasis thus effectively rejects the State's assertion that once a court finds a prior conviction or an aggravating factor admitted by the defendant or reflected in the jury verdict, a court may consider *any* other relevant factor to aggravate a sentence. This policy runs contrary to *Blakely's* admonition that a court must sentence a defendant based *"solely"* on admitted facts or facts inherent in the jury verdict.[3]

---

**3.** *See Munninger*, 209 Ariz. at 480–81, ¶¶ 20–21, 104 P.3d at 211–12 (discussing language of three United States Supreme Court cases and determining that every fact that is not admitted by

defendant, reflected in the jury verdict or a prior conviction, must be found by a jury beyond a reasonable doubt).

¶ 17 The State's approach also violates the spirit of *Blakely* by allowing one valid factor to trump a defendant's constitutional right to have the jury find *all* factors that expose him to a sentence beyond the statutory maximum. As the Supreme Court made clear in both *Apprendi* and *Blakely,* the basis for requiring a jury to find any and all contested aggravating factors, other than prior convictions, is in the historical notions imbedded in the Sixth Amendment to protect the people from overreaching and arbitrary sentences sought by the state and imposed by judges. *Apprendi,* 530 U.S. at 476–81, 120 S.Ct. 2348; *Blakely,* 124 S.Ct. at 2538–40. By ensuring that only a jury could find facts which might increase the sentence otherwise permitted by a verdict, the Court explained:

"[T]o guard against a spirit of oppression and tyranny on the part of the rulers," and "as the great bulwark of [our] civil and political liberties," ... trial by jury has been understood to require that "the truth of every accusation ... should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours...."

*Apprendi,* 530 U.S. at 477, 120 S.Ct. 2348 (citation omitted) (emphasis deleted).

■ ¶ 18 The need for such protection is not a mere formality. *Blakely* seeks to ensure that the government's power to deprive citizens of liberty, whether it be wielded by the executive or judicial branches of government, be limited by the bulwark of a jury of one's peers. *Booker,* 125 S.Ct. at 753 ("The Framers of the Constitution understood the threat of 'judicial despotism' that could arise from 'arbitrary punishments upon arbitrary convictions' without the benefit of a jury in criminal cases.' ") (quoting from The Federalist No. 83 at 499 (C. Rossiter ed.1961)). Accordingly, "[o]ther than the fact of a prior conviction, *any fact* that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 124 S.Ct. at 2536 (emphasis added) (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348).

¶ 19 We recognize that our reasoning contradicts that of *Martinez,* 209 Ariz. at 282, ¶ 16, 100 P.3d at 34, which states that "[b]ecause the jury found at least one aggravating factor, defendant was eligible to receive an aggravated sentence, and the trial court's weighing of additional aggravating and mitigating circumstances to determine the appropriate sentence within the aggravated range was permissible." However, based on the language and the emphasis employed by the *Blakely* court, we respectfully disagree with *Martinez. See Timmons,* 209 Ariz. at 406, ¶¶ 7–10, 103 P.3d at 318 (declining to follow *Martinez* ); *Munninger,* 209 Ariz. at 479, ¶ 16, 104 P.3d at 210 ("[W]e disagree [with *Martinez* ] that a single properly found aggravating factor satisfies *Blakely* when the sentence also rests on other aggravating factors not found by the jury.").

■ ¶ 20 We also disagree with the State that the remaining aggravating factors used by the superior court are permissible under *Blakely.* The State argues that one of the remaining aggravating factors, which it characterizes as harm towards the victims, is implicit in the jury convicting Pitre of three counts of aggravated assault against two of the six victims. However, the court did not consider the mere fact of harm, but "the extent of the trauma suffered by the victims." The court was thus assessing degrees of harm, a nuance not reflected in the jury verdict. *See Timmons,* 209 Ariz. at 407, ¶ 14, 103 P.3d at 319 ("The court's finding of 'significant emotional harm to multiple victims' is an inherently subjective determination."). Even if the verdict were to reflect this finding by the court, the finding would not justify aggravating the other eleven sentences.

¶ 21 As for the last two aggravating factors, the presence of armed accomplices and Pitre's use of gratuitous violence, the State reiterates its argument that one proper *Blakely* factor permits the court to consider any other aggravating factors. The State thus impliedly concedes that these two factors were not inherent in the jury verdict.[4] And we fail to see how armed accomplices and use of gratuitous violence can be consid-

4. The State asserts the superior court also utilized the factor of use or threatened use of a

deadly weapon to aggravate Pitre's sentences. We are unable to find this in the record.

ered as necessarily implied findings in the jury's verdict finding Pitre guilty of armed robbery, kidnaping, theft of means of transportation or aggravated assault.[5] Each of those crimes could have been committed without the aggravating factors being found by the jury. Consequently, Pitre's aggravated sentences are improper under *Blakely* and he must be resentenced.

¶ 22 Finally, following the filing of the briefs in the matter, a panel of Division Two of this Court held that *Blakely* is not violated when a court imposes an aggravated sentence based on the court finding one aggravating factor but no mitigating factors. *State v. Alire*, 209 Ariz. 517, 519–21, ¶¶ 12–14, 105 P.3d 163, 165–67 (App.2005). We disagree with the conclusion in *Alire* because it is premised on the idea that *Blakely* applies only when a court must weigh aggravating factors against mitigating factors to determine if an aggravated sentence should be imposed. The United States Supreme Court effectively rejected that species of argument in *Blakely*, 124 S.Ct. at 2538, n. 8. There, the state argued that the list of aggravating factors was merely illustrative and not exhaustive to distinguish *Blakely* from *Apprendi* and *Ring II*. The Court stated that the distinction was immaterial and the *Apprendi/Ring/Blakely* rule applied regardless of whether the judge's authority to aggravate the sentence was based on finding a specific fact, one of several specified facts or any aggravating fact. Importantly, the Court then added:

> Nor does it matter that the judge must, after finding aggravating facts, make a judgment that they present a compelling ground for departure. He cannot make that judgment without finding some facts to support it beyond the bare elements of the offense. Whether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence.

Emphasis by the Court.

¶ 23 The panel's decision in *Alire* directly conflicts with the above holding by the United States Supreme Court. Accordingly, regardless of whether there is no mitigating fact present, which would require an aggravated sentence, if a jury finds a defendant guilty of a crime, any fact which is not *either Blakely*-exempt or—compliant which the court would use to impose an aggravated sentence must be found by or be implicit in the jury's verdict.

¶ 24 We cannot determine whether the jury would have found beyond a reasonable doubt the aggravating factors the superior court used to sentence Pitre. As such, the sentences imposed were fundamental, reversible error. *See Resendis–Felix*, 209 Ariz. at 295, ¶ 11, 100 P.3d at 460 (sentence vacated due to *Blakely* error).[6]

## CONCLUSION

¶ 25 Accordingly, we affirm Pitre's convictions. However, we vacate and remand for resentencing consistent with this Court's decision and *Blakely*.

CONCURRING: G. MURRAY SNOW, Presiding Judge.

PORTLEY, Judge, Concurring.

¶ 26 I concur with the majority.

¶ 27 In *State v. Martinez*, 209 Ariz. 280, 100 P.3d 30 (A00 2004), I concurred with the determination that if there was an aggravating factor implicit in the jury's verdict, and the trial court considered other factors, *Blakely* was satisfied.

---

5. The superior court essentially acknowledged that the facts behind the gratuitous use of violence were not found by the jury. At the sentencing hearing, Pitre's grandmother testified that he was not dangerous. The court responded, "Would you agree that if he took a pistol and whipped a lady in the head, that shows he's dangerous?" Later, defense counsel told the court, "my client wanted me to correct that he does not believe the record reflects that a pregnant woman was hit over the head with a gun. There is no legal cause that I know of." The court replied, "Yes. I may have misspoken when I was talking to the grandmother about how violent the testimony was." However, when the court discussed the aggravating factors, it cited the incident as the reason for finding use of gratuitous violence.

6. Given our determination, we need not decide whether *Blakely* error is structural in nature. *See State v. Henderson*, 209 Ariz. 300, 315, ¶ 55, 100 P.3d 911, 926 (App.2004) (Weisberg, J., concurring); *Resendis–Felix*, 209 Ariz. at 296, ¶ 12, 100 P.3d at 461 (Eckerstrom, J., concurring).

¶ 28 In that capital murder case, the jury found Martinez guilty of brutal murder of Mabel Lopez by multiple stab wounds, but did not find any aggravating factors to warrant the death penalty. The trial court, after listing aggravating factors that were not found by the jury, imposed aggravated sentences on the ancillary crimes of burglary and theft.

¶ 29 Now, having wrestled with the issue, I have come to the conclusion that in the cases that were still on appeal when *Blakely* was published, where we are trying to discern whether the Sixth Amendment was violated at the time of the conviction and sentence, the better analysis is the harmless error analysis articulated in *State v. Munninger,* 209 Ariz. at 478–79, ¶ 13, 104 P.3d at 209–10. It states that:

> "[t]he failure to submit an aggravating factor to the jury may be harmless when 'no reasonable jury could find that the state failed to prove the ... factor beyond a reasonable doubt.'
>
> No reversible error occurs when the evidence 'overwhelmingly establishes' the factor, the defendant stipulated to the facts constituting the aggravating circumstance, or the fact is implicit in the jury's verdict of guilt."

*Id.* (internal citations omitted)

¶ 30 The analysis recognizes that the trial courts were following established law and procedural rules existing before *Blakely* and, wherever possible, allows us to affirm the sentence if the evidence supports the aggravating factors and we can say that the trial court would have imposed the same sentence under *Blakely*. If, however, the analysis demonstrates that the evidence used to support the aggravating factor evidence was not overwhelming and there is some question about whether it could be found beyond a reasonable doubt, then the case should be remanded so the trial court can resentence a defendant mindful of *Blakely*.

¶ 31 In *Martinez,* using the harmless error analysis, I could state that the trial evidence overwhelmingly established that there was an accomplice, that a knife was used, that the severe injuries that resulted in Ms. Lopez's death were emotionally and physically painful, that it was a brutal crime. I do not believe that the trial court could find that the crime was committed for pecuniary gain, since the jury had rejected that aggravating factor. Based on the totality of the evidence, the trial court would have imposed the same aggravated sentence for the burglary and theft.

¶ 32 Here, Pitre's prior convictions are *Blakely*-compliant.[7] However, the other aggravating factors need to be analyzed in light of the harmless error doctrine. The gratuitous use of violence factor, was not found by the jury. The trial court indicated on the record that he may have misspoken when talking about the nature of the violence and whether appellant had struck one of the victims with a gun. If the trial judge is mistaken about the factor, it undermines any notion that the evidence is overwhelming.

¶ 33 Consequently, based on the harmless error analysis, I concur that the sentence needs to be vacated and the matter remanded for resentencing.

7. If the trial court had only considered Pitre's prior convictions, he could have imposed the same sentence.